UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-10052-CIV-MOORE/SIMONTON

DOUGLAS C. KILPATRICK,

    Plaintiff,

v.

BREG, INC.,

    Defendant.
_____/

## ORDER ON PENDING DISCOVERY MOTIONS

Presently pending before the Court is Plaintiff's Motion for Reconsideration (DE # 76), which is fully briefed (DE ## 101, 121); Plaintiff's Motions to Compel (DE ## 96, 97, 98, 99), which are fully briefed (DE ## 118, 119, 152); and, Defendant's Motion to Strike (DE # 112).[1] All pretrial discovery matters are referred to the undersigned Magistrate Judge (DE # 4). A hearing was held before the undersigned Magistrate Judge on June 19, 2009.[2] This Order sets forth the rulings made during the hearing and incorporates by reference the reasons stated on the record. Based upon a careful review of the record, including the parties' arguments at the hearing, Plaintiff's Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**; Plaintiff's Motions to Compel are **GRANTED IN PART AND DENIED IN PART**; and, Defendant's Motion to Strike is **DENIED**.

---

    [1] Plaintiff filed a response to this motion (DE # 115).

    [2] Defendant requested a continuance of the hearing due to a conflict with the deposition of an expert witness in Washington, D.C (DE # 131). As stated on the record at the hearing, a continuance was impossible because of the imminent trial date in this case, as well as the fact that a trial is specially set to commence before the undersigned Magistrate Judge on January 22, 2009, and it is expected to last the entire week. Defendant's counsel who was responsible for coordinating discovery was permitted to appear telephonically from Washington, D.C., and co-counsel appeared in person at the hearing. This motion is, therefore, denied as moot.

I.   BACKGROUND

According to the allegations in the Complaint, Plaintiff, Douglas Kilpatrick, underwent shoulder surgery on October 5, 2004; a pain pump manufactured by Defendant, Breg, Inc., was inserted directly into his shoulder joint space via catheter in order to administer a continuous drip of non-narcotic pain medication; and, as a result of this use of Breg's pain pump, he suffered a degenerative cartilage condition known as chondrolysis. Plaintiff contends that at the time of his surgery, Breg knew that its pain pumps were being used in this manner; that such a use was likely to cause chondrolysis; and, that Breg is therefore liable for the damages resulting from his post-operative condition (DE # 1).

The District Court recently denied Plaintiff's motion to continue the trial, in which Plaintiff argued, among other things, that more time was necessary to investigate his concerns regarding the adequacy of Defendant's discovery responses, many of which are addressed in connection with the presently pending motions to compel. The trial in this case remains set for the two-week trial period commencing July 6, 2009 (DE # 128).

II.   PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff explains in his motion to compel that, due to an oversight by a legal assistant, Plaintiff's counsel was not aware that Breg had filed a motion to compel. As a result of this oversight, Plaintiff failed to respond to the motion to compel; and, consequently, the undersigned issued an Order granting the motion to compel by default, which among other things, deemed certain requests for admission ("RFAs") admitted. Plaintiff asks that the Court permit him to withdraw three of those admissions because they resulted from his counsel's excusable neglect; because the admissions are contrary to the record compiled in this case; and, because Breg will not be

prejudiced if they are withdrawn. Although Plaintiff initially sought to withdraw a total of six deemed admissions, he confirmed at the hearing that he narrowed his request for relief in his reply brief to the three admissions discussed herein (DE # 121).

    A.    <u>Request for Admission No. 3</u>

Plaintiff was deemed to have admitted RFA No. 3, which provides that

> Breg obeyed all federal, state or government regulations, guidelines or statutes regarding the design, manufacture, promotion, sale and distribution of . . . pain pump which was used immediately following plaintiff[']s surgery on October 5, 2004

(DE # 54 at 7).

The parties agree that this issue was heavily litigated despite the admission; and, it constitutes the core matter in dispute among the parties. Thus, consistent with the parties' agreement at the hearing, the undersigned concludes that this admission shall be withdrawn both in the interest of presenting this case on its merits and because Breg did not rely on this admission to its detriment and therefore will not be prejudiced by its withdrawal. *See* Fed. R. Civ. P. 36; *Perez v. Miami-Dade County*, 297 F.3d 1255, 1264 (11th Cir. 2002); *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 686 (M.D. Fla. 2005).

    B.    <u>Requests for Admission Nos. 14-15</u>

Plaintiff was deemed to have admitted RFA Nos. 14 and 15, which provide, respectively, that,

> prior to October 5, 2005, (date of plaintiff Kilpatrick's surgery) the FDA did not make any ruling or provide any regulations or discussions prohibiting the use of continuous flow pain pump catheters in the intra-articular space due to concerns specific to chondrolysis[; and]
>
> prior to October 5, 2004 (date of plaintiff Kilpatrick's surgery) the FDA did not refuse or reject any 510K application regarding intra-articular catheter placement due to an alleged concern of the development of shoulder

3

chondrolysis

(DE # 54 at 10-11).

The record reflects that, prior to Plaintiff's surgery in 2004, the FDA did not approve pain pumps similar to the one at issue in this case to be used in the intra-articular space. While Plaintiff acknowledges the FDA rulings did not expressly mention chondrolysis, which is consistent with the admissions, Plaintiff nevertheless maintains that it is possible that unmentioned concerns about chondrolysis necessarily contributed the FDA's rulings regarding pain pumps. Thus, Plaintiff is concerned that as a result of these deemed admissions, he will not be permitted to explore this ambiguity at trial; and, that Breg will argue that these admissions preclude Plaintiff from asserting that the FDA's rulings were animated, in part, by concerns regarding chondrolysis or any related conditions involving the degeneration or destruction of cartilage.

As stated on the record at the hearing, the wording of these RFAs are narrow and merely state, consistent with the record compiled in this case, that chondrolysis was not expressly mentioned in the FDA's rulings regarding pain pumps prior to the time of Plaintiff's surgery. The parties agree to the limited scope of this deemed admission; and, that such an admission will not subserve the presentation of the merits or prejudice either party.

Thus, consistent with the agreement of the parties, the undersigned concludes that Plaintiff's request to withdraw the admissions expressed in RFA Nos. 14 and 15 is denied. This Order does not, however, preclude the parties from making arguments at trial regarding the bases underlying the FDA's rulings with respect to the use of pain pumps during the relevant period, notwithstanding Plaintiff's deemed admission that the FDA did not specifically and explicitly cite chondrolysis in any of its rulings.

### III.   MOTIONS TO COMPEL

The core concern raised in Plaintiff's motions to compel is that Breg's production of electronic discovery is incomplete. The undersigned begins by putting this discovery dispute in context: A key issue in this case is the extent to which Breg was aware that the use of its pain pumps could cause chondrolysis prior to Plaintiff's surgery on October 5, 2004. As Plaintiff explained in his motion for a continuance of the trial date, Breg's employees testified at deposition that they were unaware of any such connection until March 2006, but recently-discovered emails and memoranda indicate that Breg employees were discussing that topic as early as December 2005. Plaintiff acknowledges that his concerns are largely circumstantial, but notes that this inconsistent evidence, when combined with certain purported irregularities in Breg's production of electronic discovery, lead him to believe that there are additional responsive documents that have not yet been produced, and will show that Breg was aware that its pain pumps could cause chondrolysis before it was used in connection with Plaintiff's surgery.[3]

---

[3] The undersigned notes that there are a number of issues that are prominently raised in Plaintiff's briefs, but are either belied by the record or were explained during the hearing.

For example, Plaintiff emphasized that one of the recently-discovered emails refers to a memorandum prepared by a Breg employee concerning the potential relationship between the pain pump and chondrolysis in December 2005, but the date of the memorandum as reflected in the discovery materials is April 2009. Though Plaintiff suggested that the date of the memorandum was intended to obscure its significance, Breg explained at the hearing that the incorrect date was inadvertently printed because the document was formatted to display the date on which the document was last opened (i.e., the date that it was printed in order to produce in discovery in this litigation), and not the date that it was created.

Moreover, Plaintiff claimed that Breg obscured the fact that it would not search its archived electronic documents by reciting boilerplate language in its general objections to discovery requests. However, in addition to its general objections, Breg specifically objected to searching its archived electron records in response to Plaintiff's individual

The undersigned agrees that the current state of the record indicates that there are documents responsive to Plaintiff's discovery requests that have not been produced. For instance, Breg produced an email between two Breg employees that was sent on January 5, 2006 and refers to the fact that they last spoke on December 19, 2005, regarding chondrolysis and its pain pumps. This is significant not only because it contradicts the deposition testimony of the Breg employees who said they were first aware of a potential problem until March 2006, but also because Breg has not produced any records memorializing these meetings or discussions. This omission is especially glaring considering that Breg repeatedly assured Plaintiff throughout the course of this litigation that it was not necessary to conduct in-depth discovery of Breg's archived electronic documents because any relevant information could be gleaned through employee depositions and the notebooks that they kept which contain printed versions of any germane materials.

On the other hand, the undersigned agrees with Breg that Plaintiff's relief must be limited for the following reasons: First, the undersigned questions the likelihood that any relevant documents remain in Breg's archives and have not been produced. Even if

---

discovery requests, by stating that responsive documents include "internal email communications which may be held by Breg in disaster recovery back up storage[, which] is not reasonably accessible, and plaintiff is unable to demonstrate the need and relevance that outweigh the costs and burdens of retrieving and processing" it (*see, e.g.,* DE # 119, Ex. C at 15).

Plaintiff also withdrew his mistaken assertion that Breg was preparing to produce 100,000 additional electronic documents that it had not previously disclosed. As Breg's counsel explained at the hearing, its reference to those 100,000 documents appeared in its brief as a quotation from an earlier discovery response, and there is no dispute those documents have already been produced.

In addition, Plaintiff questioned whether Breg had searched its active for responsive documents generated prior to 2006, though Breg's counsel stated clearly and concisely at the hearing that Breg had searched all of the active email files for the relevant employees beginning in 1998.

the emails cited by Plaintiff suggest that Breg's employees first became aware of the possible connection between the pain pump and chondrolysis in December 2005, this is not a smoking gun, because Plaintiff has not pointed to anything – aside from published articles that Plaintiff admits did not constitute the "mainstream" perspective – that would indicate that Breg was aware of any potential problem prior to Plaintiff's surgery in October 2004.[4]  Moreover, the tenor of the December 2005 emails suggests that the potential chondrolysis connection was only recently discovered.  Thus it is unlikely that any material new documents are located within the disaster recovery tapes.[5]  Second, due to the fact that these issues are being raised at the eleventh hour not only makes it impossible to complete the searches that Plaintiff requests prior to the start of trial, but it also creates the risk of unduly interfering with Breg's ability to prepare for trial, if it is required to conduct an extensive review of documents at this late date.

It is with all of these considerations in mind that the undersigned endeavors to balance the potential relevance of the discovery materials with the burden and cost attendant to producing them on the eve of trial.  There is no reliable account of the time or expense associated with searching Breg's electronic archives because Breg's Vice President of Information Technology based his deposition testimony and sworn declaration on the assumption that Breg would conduct the search using in-house facilities and its own employees.  Neither party contacted an outside vendor to

---

[4] Although Plaintiff maintains that the conflicting deposition testimony arose from an improper motive, the undersigned finds that the Breg employees could have been innocently mistaken, considering the fact that these events occurred approximately 3.5 years ago and the difference in time is approximately three months.

[5] This observation supports the District Court's decision to deny Plaintiff's motion to continue the trial; and, it also provides the rationale for requiring Plaintiff to bear the cost of pursuing this dubious line of discovery.

**determine the time and cost of retrieving those documents by a specialist in that field and whether that would reduce the associated burden and expense.**

**The undersigned therefore concludes that Plaintiff may, but is not required to, hire an outside vendor for the purpose of confirming the completeness of Breg's electronic document production, at its own expense, and subject to the following conditions, as stated on the record at the hearing:**

1. **Plaintiff's search may encompass, at most, five of Breg's back-up tapes. Plaintiff shall provide Breg with a single list of those tapes that it wishes to search, to avoid unnecessarily burdening Breg with the responsibility to make multiple trips to its off-site storage facility.**

2. **Breg must be provided with the results of the search no later than June 26, 2009; and, Breg must review those documents and deliver all discoverable materials to Plaintiff's counsel no later than July 1, 2009.**

3. **The search shall encompass the email archives of the seven Breg employees identified by the parties as having participated in potentially relevant communications.**

4. **The search shall be constrained to prevent interfering with Breg's preparation for trial; and, therefore, the search shall include a limited number of search terms, including the word "chondrolysis."[6]**

---

[6] Out of a concern that a search for the term "chondrolysis" may overlook relevant documents that address cartilage damage thought to be caused by the pain pump, the parties agreed to expand the scope of permissible search terms (e.g., to include a search for the term "cartilage damage" in proximity to the terms "intra-articular" and "shoulder joint"), with the understanding that neither party would benefit from having to cull through a document dump involving large amounts of irrelevant information only weeks before trial.

    5.      The documents resulting from the search shall be segregated based on whether the document resulted from a search of the word "chondrolysis," as opposed to another keyword.

    6.      Because the backup tapes contain confidential data and are preserved by Breg for disaster recovery purposes, the search shall be subject to the terms of a confidentiality agreement; and, the tapes shall be returned to Breg in the same condition that they were received.

For the reasons explained in more detail on the record at the hearing, any discovery matters that are not addressed in connection with the Court's procedure for additional limited discovery, as set forth above, are hereby denied. For example, Breg's motion to strike (DE # 112) is denied based on the fact that it is cumulative of the timeliness issues which were raised in its response and which the Court considered in crafting the procedures governing additional limited discovery. Likewise, Plaintiff's motions to compel better responses based upon Breg's improper general objections (DE ## 96-99) are denied as untimely, because the general objections were first raised in connection with Breg's discovery responses and the requirement for filing a discovery motion within 30 days of the occurrence of the grounds of the motion is not reset simply because the opposing party supplements its responses with the same allegedly improper objections. It is, accordingly,

**ORDERED AND ADJUDGED** that Defendant's Motion to Continue Hearing (DE # 131) is **DENIED AS MOOT**. It is further

**ORDERED AND ADJUDGED** that Defendant's Motion to Strike (DE # 112) is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Reconsideration (DE # 76) is **GRANTED, IN PART**, with respect to RFA No. 3, **AND DENIED, IN PART**, with respect to RFA Nos. 14-15.  As stated above, Plaintiff is deemed to have admitted that the FDA's rulings regarding approved uses for pain pumps similar to the one at issue in this case did not expressly cite concerns about chondrolysis; and, the parties remain free to address the reasons underlying the FDA's rulings at trial.  It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motions to Compel (DE ## 96, 97, 98, 99) are **GRANTED IN PART AND DENIED IN PART**.  Plaintiff may, but is not required to, conduct additional limited electronic discovery, and it shall bear the cost of such additional discovery, subject to the conditions set forth in the body of this Order.  On or before June 26, 2009, Breg shall be provided with the documents resulting from the limited keyword search of its backup tapes; and, on or before July 1, 2009, Breg shall serve Plaintiff will all discoverable documents resulting from the search.

**DONE AND ORDERED** in chambers in Miami, Florida on June 22, 2009.

*Andrea M. Simonton*
_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable K. Michael Moore,
    United States District Judge
All counsel of record